The opinion of the court was delivered by
Marr, J.
On the tenth March, 1874, Lyons brought suit against Teal and Nicholls; and, under art. 240, number four of the Code of Practice, he caused process of attachment to issue, under which the sheriff seized one thousand logs, “ more or less,” lying in the Hickory Branch of the Calcasieu, and placed them in charge of a keeper.
Pending the suit a -flood carried off the greater part of the logs, some of which were collected and secured by the keeper. Plaintiff represented to the court that the logs were perishable; and obtained an order that they be sold for cash, and the' proceeds retained by the sheriff to abide the result of the suit. The sheriff advertised for sale 700 logs, “ more or less; ” and he actually sold 399, for $540 96.
On trial on the merits, the court rejected the demand of Lyons- *1141 •as in case of nonsuit; and dissolved the attachment, reserving to the ■defendants the right to sue on the attachment bond for damages. This judgment was affirmed on appeal, 28 An. 592; and this suit was brought •against Lyons and Smart his surety to recover of them, in solido, the full •amount of the bond, $1125, and against Lyons alone the additional sum of $343 56, damages for the wrongful issuing of the attachment.
Defendants plead the general issue ; “ and Oscar Lyons, one of the defendants, re-averring, as in his original petition, and praying as therein prayed for, they pray that plaintiffs’ demand be rejected at their cost, ahd for general relief.”
A few days after defendants offered an amended answer, alleging that plaintiffs were indebted to Lyons in the sum of $736, and praying judgment for that amount, with interest, “ as claimed in his original petition.” This was followed by a second amended answer, alleging the indebtedness of plaintiffs to Lyons in the sum of seven hundred and thirty-six. dollars, “ which they hereby plead in reconvention.” They ■also allege that Teal, one of the plaintiffs, is a resident of the parish of St. Landry.
Both these amendments were disallowed by the court; and we think correctly. A reconventional demand must set out the claim of ■defendant with the'same precision as would be required in a petition for the same cause of action; and a mere reference to a former suit does not make the allegations of the petition in that suit part of the pleading in which it is so referred to. The indebtedness of Teal and Nicholls to Lyons is wholly independent of and distinct from the claim of Teal andNicholls against Lyons and his surety for the wrongful issuing of an •attachment. The suit was pending in the parish of Calcasieu, the residence of Lyons and Smart, and of Nicholls, one of the plaintiffs; and the fact that Teal, one of the plaintiffs, resided in St. Landry does not authorize the defendants to institute a reconventional demand against Nicholls and Teal. C. P. 374, 375.
The judgment of the district court was in favor of plaintiffs for $540 96, the value of the logs actually sold by the sheriff, and $75, for attorney’s fees in the attachment suit; and on the same day, on rule taken by plaintiffs on the sheriff, and upon his confession, judgment was rendered against him for the $540 96, less $25, paid, with stay of ■execution for six months, the $25 paid, and so much of the remainder as might be paid to be applied by plaintiffs to the satisfaction of the judgment in their favor against Lyons and Smart.
Both parties appealed from the judgment in favor of plaintiffs' ■against Lyons and Smart; and plaintiffs, in answer to the appeal of ■defendants,' pray that the judgment be so amended as to allow them the additional sum of $751 25, the value of 601 logs, at $1 25 per log, they *1142 -claiming that the whole number seized under the attachment was 1000, of which the 399 sold by the sheriff were part.
The testimony is not satisfactory as to the number of logs seized by the sheriff; and his keeper could not state the number. No doubt Teal and Nicholls had as many as 1000 logs ; but it is by no means clear that there was that number at the mouth of the Hickory Branch; and none others were taken into possession by the sheriff or his keeper.. The district judge heard the numerous witnesses ; and he concluded that the plaintiffs were entitled to recover only for the 399 actually sold by the sheriff. The testimony leaves the impression on our minds that there must have been between 800 and 1000 logs in the lot seized by the sheriff. Some of the witnesses say not less than 1000, one says 900 to 1200. Whether all that were seized by the sheriff were carried off' by the flood, or part only, \ye can not determine; but the greater part of them certainly floated off. Some of them were recovered, but strange to say, the testimony does not fix the number. The plaintiffs are clearly entitled to full reparation for the damage caused them by the wrongful issuing of the attachment; but they are entitled to nothing more, because there is neither allegation nor proof of malice or other bad motive on the part of Lyons.
The sheriff’s return shows that he supposed he had seized 1000 logs; but he did not take the trouble to count them, nor to have them counted, and he qualifies the return by the words “ more or less.” When he advertised the logs for sale, he did not know how many had been or would be recovered; and he states the number to be sold at 700, “more or less.”" We think we may fairly assume that 700 will not be in excess of the number of which plaintiffs were deprived by the attachment; that is,, the 399, actually sold, and 301, lost; and that plaintiffs are entitled to recover the value of the 301, at $1 25 per log, proved to be the average price.
With respect to the 399 logs sold by the sheriff, plaintiffs might have pursued the sheriff for the proceeds in his. hands, and have obtained judgment against him, with interest from the date of default on his part; and they might also have obtained judgment against Lyons- and his surety for the value of these logs ; but they could have but one satisfaction.
By proceeding against the sheriff, they ratified the sale made by him; and they could have claimed no more than the proceeds of Lyons and Smart, as the value of those logs. The sheriff was entitled to no delay or indulgence. He is bound to be always ready to pay, at once, to the party entitled, money received by him in his official capacity; and when plaintiffs, instead of compelling the sheriff to pay, immediately granted him a stay of execution for six months, they *1143 treated and dealt with the money in his hands as their own; and subjected Lyons to the risk oí the loss of that amount. Probably the sureties of the sheriff would claim to be released by this indulgence.
We think the defendants are liable for the value of the 700 logs, with interest from judicial demand, by which they were put in default; and $75 for attorney’s fees, subject to a credit of $540 96, on the twenty-fourth March, 1877, the date of the judgment granting stay of execution to the sheriff.
The yalue of the 399 logs is fixed at $540 96 : the value of the 301, at the average price $1 25, is $376 25, in all $917 21: to which add the $75 for attorney’s fees, the total is $992 21, on which plaintiffs are entitled to legal interest from judicial demand, September 7,1876: say up to March 24, 1877, six months seventeen days, $27 12, in all $1019 33. Deduct the $540 96, March 24, there remains a balance of $478 37.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be so amended as to read as follows, and decree: That plaintiffs, William C. Teal and Lewis M. Nicholls, do have and recover of and from the defendants, Oscar S. Lyons and William W. Smart, his surety in the attachment bond, in solido, the sum of four hundred and seventy-eight dollars and thirty-seven cents ($478 37), with interest at five per cent per annum from the twenty-fourth March, 1877, until paid: and that, as thus amended, the said judgment be affirmed, with costs.